**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJIE BROOKINS, | CASE NO. 1:05-cv-0413-OWW-DLB PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | (Doc. 45) |
| R. VOGEL, et al., | |
| Defendants. | |
| _____/ | |

I.  Findings and Recommendations Addressing Motion for Summary Judgment

   A.   Procedural History

   Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's complaint, filed March 28, 2005, against defendants Vogel, Hayward, Olivas, and Oliver ("defendants") for use of excessive force, in violation of the Eighth Amendment and retaliation in, in violation of the First Amendment. On March 6, 2007, defendants filed a motion for summary judgment, and on April 16, 2007 plaintiff filed an opposition.

   B.   Summary Judgment Standard

   Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the

1

        pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It is the moving party's burden to establish that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978).

    "When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (quoting from W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Issues of Material Fact 99 F.R.D. 465, 487 (1984)). "But where the moving party has the burden - the plaintiff on a claim for relief or the defendant on an affirmative defense - his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Id. Thus, as to defendants' motion for summary judgment, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

    If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475

1  U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e.,
2  a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby,
3  Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d
4  626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable
5  jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d
6  1433, 1436 (9th Cir. 1987).

7        In the endeavor to establish the existence of a factual dispute, the opposing party need not
8  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
9  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
10 trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce
11 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
12 Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
13 amendments).

14       In resolving the summary judgment motion, the court examines the pleadings, depositions,
15 answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ.
16 P. 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all
17 reasonable inferences that may be drawn from the facts placed before the court must be drawn in
18 favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369
19 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is
20 the opposing party's obligation to produce a factual predicate from which the inference may be
21 drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810
22 F.2d 898, 902 (9th Cir. 1987).

23       Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show
24 that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole
25 could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for
26 trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).
27 ///
28 ///

C.     Undisputed Facts

1. Plaintiff is an inmate in the lawful custody of the California Department of Corrections and Rehabilitation (CDCR) and was transferred to the California State Prison Corcoran (CSP-Cor) Security Housing Unit (SHU), on June 9, 2004.

2. The purpose and objective of the SHU is to maximize control of inmates who pose a definite and serious threat to the safety of others or themselves.

3. The SHU is a segregated housing complex, which serves to place extreme limits on inmate opportunity for violent and disruptive behavior.

4. The SHU provides close supervision and physical controls to prevent disorder and provide protections for others.

5. On June 9, 2004 at approximately 6:10 p.m., Officers Oliver and Olivas were called to the program holding cell in CSP-Cor building 4A, to escort plaintiff.

6. At some point during the escort, Officers Oliver and Olivas forced plaintiff into a prone position on the ground.

7. At some point during the escort, Officer Oliver administered a one second burst of his state issued MK 9 OC pepper spray in plaintiff's facial area.

8. Plaintiff was escorted, by wheelchair to the 4A1L "C" section lower tier shower to be decontaminated.

9. MTA Terronez medically examined and cleared plaintiff.

10. The CDC Form 7219 prepared by MTA Terronez noted that the altercation occurred at 1810 hours and that plaintiff was seen at 1815 hours. Plaintiff was observed to have a right temple bruise, a small shoulder bruise, a slight abrasion on his left inner thigh, no bruises on his left inner thigh, no bruises were seen on his face of the left side of his head and there were no marks on his back.

D.     Discussion

1.     Excessive Force Claim

In his complaint, plaintiff alleges that on June 9, 2004, defendants Hayward, Olivas and Oliver used excessive force on him during an escort from the program office to his housing unit.

4

Plaintiff claims defendants repeatedly struck him with closed fists, kicked and stomped him the throat, chest, arms, legs, groin, shoulders, ankles, back, hips, hands and head. Plaintiff also contends defendants kicked him in the right temple, causing him to lose consciousness. Plaintiff further alleges that upon his return from the institution's emergency room, defendant Vogel kicked him in the chest.

Defendants' contend that on June 9, 2004, Officers Oliver and Olivas were called to the program holding cell in building 4A to escort plaintiff to building 4A1L. Olivas Dec. ¶ 3, Oliver Dec. ¶ 3. Defendants contend plaintiff became aggressive by swinging his elbows from left to right trying to free himself from their grasp. *Id.* Defendant Olivas contends he gave plaintiff a direct order to look forward and stop resisting, with negative results. Olivas Dec. ¶ 4. Defendants contend plaintiff continued his aggressive actions by twisting his upper torso to the right, requiring defendants Oliver and Olivas to force plaintiff into a prone position on the ground. Olivas Dec. ¶¶ 5-6, Oliver Dec. ¶¶ 5-6. Defendants contend that while in the prone position, plaintiff continued to resist by moving his body and head from left to right, nearly head butting Oliver. Olivas Dec. ¶ 7, Oliver Dec. ¶ 7. Defendant Oliver contends he feared for his safety and consequently he administered a one second burst of his state issued MK 9 Oleoresin Capsicum pepper spray in plaintiff's facial area. Oliver Dec. ¶8. Defendant Vogel contends that when he responded to the scene, he observed defendants Oliver and Olivas holding plaintiff in a prone position on the ground. Vogel Dec. ¶¶ 6-8. Defendant Vogel contends plaintiff was shouting and appeared to be tensing his muscles in an attempt to get free of the officer's grasp. Vogel Dec. ¶ 9. Sergeant Vogel contends he could smell OC pepper spray. Vogel Dec. ¶ 10. Defendant Vogel states that he relieved defendants Oliver and Olivas and waited until plaintiff calmed down before ordering officers Hayward and Byrum to assist plaintiff to his feet. Vogel Dec. ¶¶ 15-16. When plaintiff refused to stand on his own, Sergeant Vogel states that he called for a wheelchair and escorted him to the 4A1L "C" section lower tier shower to decontaminate. Vogel Dec. ¶¶ 17-18. Defendants contend that plaintiff stood on his feet in the shower stream so he could decontaminate his face and when he was done, plaintiff sat back in the wheelchair, saying he could not stand. Vogel Dec. ¶ 20. Defendants contend plaintiff was examined by MTA Terronez and medically cleared. Vogel Dec. ¶ 20.

1    Defendants argue that there was a need for the use of force against plaintiff on June 9, 2004
2 because he became disruptive and was physically aggressive, resistive and refused to comply with
3 direct orders. Defendants point out that plaintiff was housed in the SHU where the purpose and
4 objective is to maximize control of inmates who pose a definite and serious threat to the safety of
5 others or themselves. DUF 1-2. Defendants state the SHU is a segregated housing complex, which
6 places extreme limits on inmates' opportunity for violent and disruptive behavior and provides close
7 supervision and physical controls to prevent disorder and provide protection to others. DUF 4.
8 Defendants argue that under these higher security concerns, plaintiff refused to comply with direct
9 orders from staff, with full knowledge that force could and would be used to compel compliance.
10 Defendants argue that the amount of force used was reasonably related to the need for that force and
11 further that the extent of any injury inflicted was not serious.

12    In opposition to defendants' motion for summary judgment, plaintiff submits his own
13 declaration stating that on June 9, 2004, he was transferred from California State Prison Sacramento
14 to CSP SHU. He states that he was fully aware of the rules and regulations applicable to the SHU.
15 Plaintiff states that upon his arrival, he was harassed by numerous officers, including defendant
16 Vogel, who informed plaintiff that he "would be dropping [plaintiff's] lawsuit or eating the concrete."
17 Plaintiff states that he was escorted from the visiting room holding cell to the program office where
18 he was approached by defendant Olivas and ordered to cuff up. Plaintiff states defendant Olivas was
19 cracking his knuckles and stating "we got one." Plaintiff contends that he complied with the orders
20 and was handcuffed behind his back.

21    Plaintiff states that as he was escorted out of the program office, defendant Olivas held his left
22 arm, defendant Hayward took his right arm and defendant Oliver walked behind him with his hands
23 against plaintiff's lower back. Plaintiff contends that once they were on the grassy area in front of
24 building 4A1L, defendant Olivas struck plaintiff in the throat with a closed fist. Plaintiff contends
25 the three defendants then beat him with closed fists until he fell to one knee and then he was slammed
26 to the ground, pepper sprayed, stomped, kicked and punched in the head, back, arms, legs and hips.
27 Plaintiff contends that one of the defendants kicked him in the right temple, which caused him to lose
28 consciousness. Plaintiff contends he was then taken to the infirmary, unconscious and he woke up

6

1  on the infirmary table. Plaintiff contends he was taken in a wheelchair to the shower and thrown on
2  the floor, where he was left for approximately five minutes for decontaminating. Plaintiff contends
3  he was then thrown back in the wheelchair and pushed to his assigned cell.

4        "What is necessary to show sufficient harm for purposes of the Cruel and Unusual
5  Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v.
6  McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . .
7  contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and
8  citations omitted). The malicious and sadistic use of force to cause harm always violates
9  contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at
10 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force
11 standard examines de minimis uses of force, not de minimis injuries)). However, not "every
12 malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth
13 Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional
14 recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant
15 to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

16       "[W]henever prison officials stand accused of using excessive physical force in violation of
17 the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied
18 in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."
19 Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper
20 to evaluate the need for application of force, the relationship between that need and the amount of
21 force used, the threat reasonably perceived by the responsible officials, and any efforts made to
22 temper the severity of a forceful response." Id. (internal quotation marks and citations omitted).
23 "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it."
24 Id.

25       The court has considered defendants' motion, plaintiff's opposition, along with the evidence
26 submitted in support of and in opposition to the motion and the allegations set forth in plaintiff's
27 complaint, which is accompanied by exhibits. "[S]ummary judgment or judgment as a matter of law
28 in excessive force cases should be granted sparingly," Lolli v. County of Orange, 351 F.3d 410, 415-

16 (9th Cir. 2003) (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)), and in this instance, the parties agree on very little. It is undisputed that on June 9, 2004, plaintiff was escorted from the program office during which an incident occurred where force was used by the defendants. The parties' versions part ways thereafter.

      Defendants take the position that during the escort, plaintiff became aggressive by swinging his elbows from left to right trying to free himself from their grasp. Defendants contend that plaintiff refused Officer Olivas' direct order to look forward and stop resisting and continued his aggressive actions by twisting his upper torso to the right. Defendants contend that after he was forced to a prone position, plaintiff continued to resist by moving his upper body and head from left to right, nearly head butting Officer Oliver. Defendants contend that fearing for his physical safety, Officer Oliver then administered a one second burst of his state issued MK 9 OC pepper spray in plaintiff's facial area. Defendants argue that force was only applied in a good faith effort to maintain or restore discipline and was not applied maliciously and sadistically to cause harm. Finally, defendants present evidence that the force used consisted of Officers Oliver and Olivas forcing plaintiff to the ground and using pepper spray for one second.

      Plaintiff's position is that he was handcuffed with his hands behind his back and following orders when he was attacked. Plaintiff contends that he did nothing wrong and there existed no situation which required the use of any force to restore order or maintain discipline. Plaintiff also describes a much greater use of force by defendants, including, punching, kicking, stomping and slamming.

      The evidence of plaintiff, as the opposing party, is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of plaintiff. Matsushita, 475 U.S. at 587 (citing United States v. Diebold, 369 U.S. at 655 (per curiam)). To the extent that plaintiff's version of the events may lack credibility, it is for the trier of fact to weigh the evidence and make credibility determinations.

      Plaintiff's declaration and verified amended complaint create factual disputes regarding whether or not there existed a situation which required the use of force and the amount of force used. The trier of fact must sort through the parties' versions of the event and determine whether the force

8

1  used was excessive or not under the circumstances.

2  In addition, given the obvious factual disputes about plaintiff's behavior during the escort and
3  the amount of force that was used, defendants' argument that the undisputed medical evidence is
4  inconsistent with plaintiff's claimed injuries, is not persuasive. The malicious and sadistic use of
5  force to cause harm always violates contemporary standards of decency, regardless of whether or not
6  significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002)
7  (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis
8  injuries)).

9  Defendants' motion for summary adjudication of plaintiff's excessive force claim should
10 therefore be denied.

11     2.    Retaliation Claim

12 Plaintiff claims that the alleged use of excessive force was in retaliation for his refusal to drop
13 a pending civil rights lawsuit.

14 Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition
15 the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.
16 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d
17 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation
18 entails five basic elements: (1) An assertion that a state actor took some adverse action against an
19 inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the
20 inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a
21 legitimate correctional goal." Rhodes v. Robinson, No. 03-15335, 2005 WL 937814, at *5 (9th Cir.
22 Apr. 25, 2005). The court must "'afford appropriate deference and flexibility' to prison officials in
23 the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt
24 v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).
25 The burden is on plaintiff to demonstrate "that there were no legitimate correctional purposes
26 motivating the actions he complains of." Pratt, 65 F.3d at 808.

27 Defendants argue they are entitled to judgment as a matter of law because plaintiff contends
28 the adverse action occurred on the day of his transfer to CSP-Cor (DUF 1) and plaintiff provides no

9

evidence that defendants were aware of his pending civil complaint, nor does he refute defendants' evidence that they were unaware of any pending lawsuits. DUF 46. Defendants also argue that plaintiff fails to show an injury as a result of the alleged retaliation and he fails to demonstrate that the alleged retaliation did not advance the legitimate correctional goals of the lawsuit.

Plaintiff contends that when he was in the program office, defendant Vogel told him that he "would be dropping the lawsuit or plaintiff would be eating the concrete." Brookins Dec., ¶4; Comp., ¶¶ 8-18. Plaintiff contends that when he was escorted out of the program office, without provocation, defendants beat and stomped him and that based on the circumstances, he believes that these officers were ordered to beat him after he did not respond to defendant's Vogel's order to drop his civil suit. Because the evidence set forth by plaintiff is sufficient to create a triable issue of fact with respect to whether or not plaintiff was attacked in retaliation for not dropping his civil lawsuit against staff, the court shall recommend that defendants' motion for summary adjudication on plaintiff's retaliation claim be denied.

F.   Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that defendants' motion for summary judgment, filed March 6, 2007, be GRANTED IN PART AND DENIED IN PART as follows:

1.   Defendants' motion for summary adjudication on plaintiff's excessive force claim against him be DENIED; and

2.    Defendants' motion for summary adjudication on plaintiff's retaliation claim, be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty (20) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 13, 2008**                    /s/ **Dennis L. Beck**
                                                UNITED STATES MAGISTRATE JUDGE