# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJIE D. BROOKINS,<br><br>        Plaintiff,<br><br>   v.<br><br>R. VOGEL, et al.,<br><br>        Defendants.<br>_____/ | Case No.: 1:05-cv-00413 DLB PC<br><br>**PRETRIAL ORDER**<br><br>Jury Trial: September 23, 2008 at 9:00 a.m., Courtroom 9, before United States Magistrate Judge Dennis L. Beck |

Plaintiff Benjie D. Brookins ("plaintiff") is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's complaint, filed March 28, 2005, against defendants Vogel, Hayward, Olivas, and Oliver ("defendants") for use of excessive force, in violation of the Eighth Amendment and retaliation, in violation of the First Amendment.

A telephonic trial confirmation hearing was held in this matter on June 27, 2008, and the Court now issues the instant Pretrial Order.

**I.    Jurisdiction and Venue**

The Court has subject matter jurisdiction over this federal civil rights action. 28 U.S.C. § 1331. Venue is proper because the conduct allegedly occurred in this judicial district.

**II.   Jury Trial**

The parties request trial by jury.

///

III. **Facts**

    A. <u>Undisputed Facts</u>

1. Plaintiff is an inmate in the lawful custody of the California Department of Corrections and Rehabilitation (CDCR) and was transferred to the California State Prison Corcoran (CSP-Cor) Security Housing Unit (SHU), on June 9, 2004.
2. The purpose and objective of the SHU is to maximize control of inmates who pose a definite and serious threat to the safety of others or themselves.
3. The SHU is a segregated housing complex, which serves to place extreme limits on inmate opportunity for violent and disruptive behavior.
4. The SHU provides close supervision and physical controls to prevent disorder and provide protections for others.
5. On June 9, 2004, at approximately 6:10 p.m., Officers Oliver and Olivas were called to the program holding cell in CSP-Cor building 4A, to escort Plaintiff.
6. At some point during the escort, Officers Oliver and Olivas forced Plaintiff into a prone position on the ground.
7. At some point during the escort, Officer Oliver administered a one second burst of his state-issued MK 9 OC pepper spray in Plaintiff's facial area.
8. Plaintiff was escorted in a wheelchair to the 4A1L "C" section lower tier shower to be decontaminated.
9. MTA Terronez medically examined and cleared Plaintiff.
10. The CDC Form 7219 prepared by MTA Terronez noted that the altercation occurred at 1810 hours and that plaintiff was seen at 1815 hours. Plaintiff was observed to have a right temple bruise, a small shoulder bruise, a slight abrasion on his left inner thigh, no bruises on his left inner thigh, no bruises were seen on his face of the left side of his head and there were no marks on his back.

///
///
///

B. <u>Disputed Facts</u>

i. <u>Defendants' Disputed Facts</u>

1. Whether there was a need for the use of some force against Plaintiff because he had become aggressive and disruptive during an escort.
2. Whether the amount of force used was reasonably related to the need for that force.
3. Whether the absence of any serious injury resulting from the incident indicates that force was applied in a good-faith effort to maintain or restore discipline, and was not applied maliciously and sadistically to cause harm.
4. Whether the threat reasonably perceived by the responsible correctional officers was significant.
5. Whether Defendants tempered the force that they used.
6. Whether Defendants used force against Plaintiff in retaliation for not dropping a civil lawsuit against correctional staff.
7. The nature and extent of Plaintiff's injury.
8. The amount of Plaintiff's compensatory damages, if any.

ii. <u>Plaintiff's Additional Disputed Facts</u>

1. Whether on June 9, 2004, defendants Hayward, Olivas and Oliver used excessive force on plaintiff during an escort from the program office to plaintiff's housing unit.
2. Whether defendants were aware, on June 9, 2004, of plaintiff's pending civil suit.
3. Whether, upon plaintiff's arrival at CSP-Cor, defendant Vogel informed plaintiff that he "would be dropping [plaintiff's] lawsuit or eating concrete".
4. Whether defendant Olivas struck plaintiff with a closed fist on the left side of plaintiff's neck.
5. Whether defendants pepper-sprayed, hit, kicked, and stomped on plaintiff's arms, legs, groin, shoulders, ankles, back, hips and hands.
6. Whether one of the defendants kicked plaintiff in the right temple, causing

1 | plaintiff to lose consciousness.
2 | 7. Whether defendant Vogel kicked plaintiff in the chest upon his return from the institution's emergency room, causing plaintiff to lose consciousness through to the morning of June 10, 2004.

C. Disputed Evidentiary Issues

1. Should Plaintiff or any other incarcerated witnesses testify, Defendants will seek to impeach such witnesses by presenting evidence of prior felony convictions and/or specific instances of conduct demonstrating a propensity to lie.

2. Defendants will object to the testimony of any witnesses not listed in Plaintiff's pretrial statement.

3. Defendants will object to any exhibits offered by Plaintiff to the extent such exhibits are unauthenticated hearsay for which there is no applicable hearsay exception.

4. Defendants will object to any discovery materials, declarations of the Defendants, and declarations of inmate witnesses offered by Plaintiff as admissible evidence. These materials may be used only to the extent permitted by the rules of evidence.

5. Without proof of an actual injury, Defendants will object to Plaintiff's claim for compensatory damages.

6. Without proof of an actual injury, Plaintiff's claim is limited to nominal damages.

7. In the absence of proof from a medical expert, Plaintiff lacks competent medical evidence to make out a prima facie case of whether he suffered any physical injury or mental harm as a result of the alleged use of force and retaliation. Plaintiff can testify as to what he experienced as a result of this incident, however, Plaintiff should be precluded from offering any opinions or inferences to be drawn from these records.

D. Special Factual Information

None.

///

**IV.     Relief Sought**

Plaintiff seeks compensatory, nominal, and punitive damages. Defendants seek judgment in their favor and their costs of this action.

**V.      Points of Law**

   A.     Excessive Force

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

///

B.     Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir. 2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Both litigation in court and filing inmate grievances are protected activities and it is impermissible for prison officials to retaliate against inmates for engaging in theses activities. However, not every allegedly adverse action will be sufficient to support a claim under section 1983 for retaliation. In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where the action taken by the defendant was clearly adverse to the plaintiff. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005) (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) (retaliatory placement in administrative segregation for filing grievances); Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003) (retaliatory validation as a gang member for filing grievances); Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997) (retaliatory

6

issuance of false rules violation and subsequent finding of guilt); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (retaliatory prison transfer and double-cell status in retaliation); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (inmate labeled him a snitch and approached by other inmates and threatened with harm as a result); Rizzo v. Dawson, 778 F.2d 527, 530-32 (9th Cir. 1985) (retaliatory reassignment out of vocational class and transfer to a different prison).

The Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury "need not be significant but must be more than *de minimis*." Oliver v. Keller, 289 F.3d 623, 627-29 (9th Cir. 2002) (allegations of severe and lasting back and leg pain, a painful canker sore, and unspecified injuries sustained in a fight not more than de minimis). The physical injury requirement applies only to claims for mental or emotional injuries and does not bar claims for compensatory, nominal, or punitive damages. Id. at 630.

**VI.   Abandoned Issues**

None.

**VII.   Witnesses**

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses. NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(10).

    A.    Plaintiff's Witnesses

    1.    Plaintiff Benjie D. Brookins, Inmate E-80932.

    2.    Correctional Officer M. Navarro.

    3.    Dr. Jeremy Tate, University of California Medical Center.

    4.    Dr. David G. Smith, California Substance Abuse Treatment Facility.

By order issued May 14, 2008, the court notified plaintiff of the witness fees and travel expenses for each of his unincarcerated witnesses. Plaintiff is reminded that a subpoena will not

be served upon the unincarcerated witness by the United States Marshal unless the money order is tendered to the court. Because no statute authorizes the use of public funds for these expenses in civil cases, the tendering of witness fees and travel expenses is required even if the party was granted leave to proceed in forma pauperis. **If plaintiff wishes to have the Marshal serve any unincarcerated witnesses who refuse to testify voluntarily, plaintiff must submit the money orders to the court no later than July 25, 2008.**

      B.     <u>Defendants' Witnesses</u>

           1.     Correctional Sergeant Ronald Vogel.

           2.     Correctional Officer Andres Olivas.

           3.     Correctional Officer William Hayward.

           4.     Correctional Officer Franz Oliver.

           5.     Correctional Officer C. Byrum.

           6.     MTA L. Terronez.

           7.     James S. Johnston, M.D.

           9.     R.N. Sexton.

           10.    William F. Greenough, M.D.

Defendants filed disclosure on May 29, 2008, that James S. Johnston, M.D., and William F. Greenough, M.D. will provide expert testimony at trial on behalf of defendants in the field of medicine with respect to plaintiff's medical condition, the treatment and care he was provided, and correctional policies, procedures, practices, and operations.

**VIII.  Exhibits**

The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(11).

      A.     <u>Plaintiff's Exhibits</u>

           1.     CDC Chronological History.

2. CDC 7219 Injury Report.

3. CDC 115 Rules Violation Report ("RVR") Final Disposition.

4. CDC 128-B Chrono by Sergeant R. Beer and CDC 837 Incident Report by C/O Byrum and all defendants.

5. CDC RVR of June 10, 2004.

6. CDC 837 Incident Report and CDC 7219 Injury Report.

7. CDC 602/ Grievances dated June 20, 2004, August 13, 2004, August 29, 2004, and February 2, 2005.

8. CDC 602 / Grievance dated June 25, 2004.

9. Plaintiff's letters to CSP-Corcoran Warden, Appeals Co-ordinator, Clerk of the Eastern District Court dated August 15, September 16, and September 5, 2004.

10. Rosen, Bien and Asaro's reply letter dated November 22, 2004 and December 29, 2004.

11. CDC 128-C Mental Health Records

12. Radiology Report dated September 15, 2006.

13. CDC 7243 Health Care Services - Physician Request for Services

14. Wilbur Suesberry, M.D., referral to U.C. Davis Medical Center.

15. James Tate, M.D., consultation reports on head injury and surgery on January 9, 2006 and April 25, 2006.

16. Radiology Reports for head and neck injuries dated May 22, 2006 and May 31, 2006.

17. Mercy Hospital Consultation report dated July 20, 2006.

18. Corcoran District Hospital Radiologist's report dated October 4, 2006.

19. Edward B. Strong., M.D. clinic notes and referral dated February 7, 2008.

20. Plaintiff's prescribed medications from June 9, 2004 through 2008.

B. <u>Defendants' Exhibits</u>

DX 200. Incident Report Log #CSP-Cor-04A-04-06-0324.

DX 201. Rules Violation Report Log #CSP-Cor 4A1-04-06-019.

DX 202. Medical Report of Injury dated June 9, 2004.

| | | |
|---|---|---|
| 1 | DX 203. | Emergency Room Admission dated June 9, 2004. |
| 2 | DX 204. | Radiology Report dated October 27, 2004. |
| 3 | DX 205. | Radiology Report dated December 6, 2004. |
| 4 | DX 206. | Radiology Report dated January 31, 2005. |
| 5 | DX 207. | Radiology Report dated February 14, 2005. |
| 6 | DX 208. | Radiology Report dated March 25, 2005. |
| 7 | DX 209. | Radiology Report dated March 22, 2006. |
| 8 | DX 210. | Radiology Report dated May 22, 2006. |
| 9 | DX 211. | Radiology Report dated May 25, 2006. |
| 10 | DX 212. | Radiology Report dated September 15, 2006. |
| 11 | DX 213. | Physician's Orders dated May 24, 2004 – November 29, 2004. |
| 12 | DX 214. | Health Care Services Requests dated June 10, 2004 – January 25, 2006. |
| 13 | DX 215. | Physician's Progress Notes dated June 16, 2004 – March 22, 2005. |
| 14 | DX 216. | Health Care Encounter Forms dated May 23, 2005 – January 27, 2006. |
| 15 | DX 217. | Video Tape referenced in Incident Report Log #CSP-Cor-04A-04-06-0324. |

**IX.  Discovery Documents To Be Used At Trial**

Plaintiff intends to use plaintiff's list of answers to defendant Hayward's interrogatories 1 - 11,  plaintiff's list of answers to defendant Olivas' interrogatories 1 - 11,  plaintiff's list of answers to defendant Oliver's interrogatories 1 - 13,  and  plaintiff's list of answers to defendant Vogel's interrogatories 1 - 10.

Plaintiff intends to use plaintiff's list of responses to defendant Hayward's admissions 1 - 13, plaintiff's list of responses to defendant Olivas' admissions 1 - 13, plaintiff's list of responses to defendant Oliver's admissions 1 - 13, and plaintiff's list of responses to defendant Vogel's admissions 1 - 11 and 13.

**X.  Further Discovery or Motions**

None.

Both parties are reminded of their continuing obligation to update all discovery responses previously made if that party becomes aware of new information or becomes aware that an answer

in a previous response is incomplete or incorrect.  Fed. R. Civ. P. 26(e)(2).  If either party intends to file motions in limine, the procedure and time requirements are set forth below.

**XI.   Stipulations**

Defendants offer to stipulate to the undisputed facts listed above, and to the admission of Defendants' exhibits listed above.

**XII.  Amendments-Dismissals**

None.

**XIII. Settlement Negotiations**

The parties are not presently engaged in settlement negotiations.

**XIV.  Agreed Statements**

None.

**XV.   Separate Trial Of Issues**

No.

**XVI.  Impartial Experts - Limitation Of Experts**

None requested.

**XVII. Attorneys' Fees**

Plaintiff is proceeding pro se and is not entitled to attorney's fees.  Defendants do not request attorney's fees.

**XVIII. Trial Exhibits**

No special handling of trial exhibits requested.

**XIX.  Miscellaneous**

    A.   <u>Further Trial Preparation</u>

        1.   <u>Motions In Limine Hearing and Briefing Schedule</u>

Any party may file a motion in limine.  The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be offered at trial.  Although the Federal Rules do not explicitly provide for the filing of motions in limine, the Court has the inherent power to hear and decide such motions as a function of its duty to expeditiously manage trials by eliminating evidence that is clearly inadmissible for any purpose.  <u>Luce v. United States</u>, 469 U.S. 38, 41 n. 4

(1984); <u>Jonasson v. Lutheran Child and Family Services</u>, 115 F. 3d 436, 440 (7th Cir. 1997). The Court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. <u>Id</u>.; <u>Hawthorne Partners v. AT & T Technologies, Inc.</u>, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

All motions in limine must be served on the other party, and filed with the Court, by **September 2, 2008**. Any motion in limine must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial.

Any opposition to a motion in limine must be served on the other party, and filed with the Court, by **September 16, 2008**.

If any party files a motion in limine, the Court will hear and decide such motions on the morning of trial.

Whether or not a party files a motion in limine, that party may still object to the introduction of evidence during the trial.

    2.  Other

The parties are relieved of their obligation under Local Rule 16-285 to file trial briefs. The Court will prepare the verdict form, which the parties will have the opportunity to review on the morning of trial. If the parties wish to submit a proposed verdict form, they must do so on or before **September 16, 2008**.

Defendants shall file proposed jury instructions as provided in Local Rule 51-163 on or before **September 16, 2008**. If plaintiff wishes to file proposed jury instructions, he must do so on or before **September 16, 2008**.

In selecting proposed instructions, the parties shall use Ninth Circuit Model Civil Jury Instructions to the extent possible. All jury instructions must be submitted in duplicate: One set will indicate which party proposes the instruction, with each instruction numbered or lettered, and containing citation of supporting authority, and the customary legend, <u>i.e.</u>, "Given, Given as Modified, or Refused," showing the Court's action, with regard to each instruction. One set will be an exact duplicate of the first, except it will not contain any identification of the party offering the instruction or supporting authority or the customary legend of the Court's disposition. Defendants

1 shall provide the Court with a copy of their proposed jury instructions via e-mail at:
2 dlborders@caed.uscourts.gov.

3     Proposed voir dire questions, if any, shall be filed on or before **September 16, 2008**. Local
4 Rule 47-162.

5     The parties may serve and file a non-argumentative, brief statement of the case which is
6 suitable for reading to the jury at the outset of jury selection on or before **September 16, 2008**. The
7 Court will consider the parties' statements but will draft its own statement. The parties will be
8 provided with the opportunity to review the Court's prepared statement on the morning of trial.

9     The original and two copies of all trial exhibits along with exhibit lists shall be submitted to
10 Courtroom Deputy Mamie Hernandez no later than **September 8, 2008**. The court has already
11 received two copies of plaintiff's exhibits. All of defendants' exhibits shall be pre-marked with the
12 prefix "DX" and numbered sequentially beginning with 200 (e.g., DX-200, DX 201, etc.).

13 **XX.   Objections to Pretrial Order**

14     Any party may file and serve written objections to any of the provisions of this Order on or
15 before **July 25, 2008.** Such objections shall specify the requested modifications, corrections,
16 additions, or deletions. If amendments to this Order result from any written objections, an Amended
17 Pretrial Order will issue.

18               ***

19 <u>FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR</u>
20 <u>THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION</u>
21 <u>OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY</u>
22 <u>WHO CAUSES NON-COMPLIANCE WITH THIS ORDER</u>.

23

24     IT IS SO ORDERED.

25     Dated:   **July 8, 2008**              **/s/ Dennis L. Beck**
                                                   UNITED STATES MAGISTRATE JUDGE
26

27

28